## Slusher et al. v. Blanton.

Jan. 21, 1944.

L. D. Bruce and C. H. Bruce for appellants.

R. H. Riggs and Thomas E. Nickel for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

This appeal is from a judgment entered upon the verdict of a jury nullifying an instrument executed on June 20, 1942, by Emily Sullivan, and probated as her will on August 12, 1942. The only issue submitted to the jury was whether Mrs. Sullivan possessed the requisite mental capacity, and the sole ground urged for reversal is that the court should have sustained appellants' motion for a directed verdict.

Mrs. Sullivan sustained a fractured shoulder and her husband was killed in an automobile accident on June 11, 1942. The husband was buried on June 13th,

and immediately thereafter the injured woman was removed to a hospital at Portsmouth, Ohio, where the will was executed. Three physicians connected with the hospital testified unequivocally that her mentality was unimpaired, as did the lawyer who was called in to write the instrument, and other witnesses, including her brother, David Slusher, a resident of Portsmouth, and the chief, practically the sole beneficiary of the will. Nor does the disposition which Mrs. Sullivan attempted to make of her small estate appear to be unnatural, considering the fact that her heirs consisted of a sister, the appellee, Florence Blanton, who seldom visited her though she lived near her, and two brothers with one of whom, the chief beneficiary, she expected to reside during the remainder of her life. Moreover, the testimony introduced by appellee to show a lack of testamentary capacity in her sister, except that given by three witnesses, showed no more than that she was an illiterate woman of, perhaps, subnormal mentality, suffering more or less constantly from cancerous growths, and displaying the attendant idiosyncracies. In Greer's Ex'r v. Bishop et al., 265 Ky. 352, 96 S. W. (2d) 851, Jackson's Ex'r v. Semones, 266 Ky. 352, 98 S. W. (2d) 505, and other cases, it is clearly stated that a perfect intelligence is not prerequisite to the ability to make a will; that the idiosyncracies and peculiarities common to many elderly persons fall far short of furnishing a basis for the conclusion of testamentary incapacity, even though they may indicate a failing mentality; and that a person should not be deprived of the right to make a will upon slight, remote, and wholly unsubstantial testimony. Bearing in mind these principles, it is obvious that this opinion may be materially shortened by considering merely whether the testimony of the three witnesses for appellee, above alluded to, strengthens appellee's otherwise weak case sufficiently to make mandatory a submission of it to the jury. That testimony may be thus briefly summarized:

Dr. Charles B. Johnson, a resident of Russell, Kentucky, who had known and treated Mrs. Sullivan and her husband for ten years or more, testified that the last time he saw her, some eight or nine days before she made her will, while she was still at her home in Flatwood "she didn't cooperate or coordinate and apparently nothing didn't impress her any;" and that at that time, judging from the history of her case and his

treatment of her, she did not possess sufficient mental capacity to know the natural objects of her bounty, the nature of her estate, or to dispose of her estate according to a fixed purpose of her own.

L. K. Perry, an insurance agent of Russell, Kentucky, testified that he visited Mrs. Sullivan at the hospital in Portsmouth, Ohio, at or about the time she executed the will. The object of his visit was to obtain proofs of her husband's death, but he found her wholly unable to answer any questions, although the nurse in charge had told him that he might go into the room.

Mrs. Emma Gilley, a close friend of Mrs. Sullivan's, testified that during the year preceding Mrs. Sullivan's death "I picked her up in Russell one day and she didn't know where she was going, it was on Friday and I was in town and she came up toward me and she didn't recognize me and I walked over to her and I said 'Mrs. Sullivan, what are you doing here?' and she didn't have mind enough to get on the bus and go home and I helped her on the bus and when we got out home I went as far as my home with her and she didn't have mind enough to get off the bus and I had to get ahold of her and help her off the bus and her niece was coming up the road and she taken her back and took her on back down home."

It may be that, notwithstanding the testimony of these three witnesses, we, sitting as triers of the facts, would have concluded that Mrs. Sullivan possessed sufficient mentality to make a will, adopting the view of one witness who stated that to the best of his knowledge "Mrs. Sullivan wasn't tetotally crazy, but she wasn't what was considered very bright—she wasn't a plum idiot but she didn't go very deep in many things." But, under our system of jurisprudence, the presentation of concrete facts bearing directly upon a common-law issue entitles a litigant to have them weighed by a jury whose finding as to their verity is binding upon us, unless flagrantly against the weight of the evidence as a whole. Since we cannot say that appellee's contention that her sister lacked mental capacity to make a will was unsupported by testimony of the requisite probative value, we have no alternative but to hold that the court did not err in overruling appellants' motion for a directed verdict.

Judgment affirmed, Whole Court sitting.